IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY JOSEPH CUSTER, | : | |
|     *Plaintiff,* | : | |
| | : | |
|   v. | : | CIVIL ACTION NO. 23-CV-1903 |
| | : | |
| JASON GREEN, et al., | : | |
|     *Defendants*. | : | |

**MEMORANDUM**

**PAPPERT, J.**                                                                                                    **December 1, 2023**

*Pro se* Plaintiff Anthony Joseph Custer asserts in his Amended Complaint (ECF No. 8) claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and state law.[1]    For the following reasons, the Court

---

[1] Although Custer appears to identify "The Anthony Custer Trust" as a plaintiff, the Court understands Anthony Joseph Custer, the individual, to be the only plaintiff in this case. In any event, although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court. *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also* 28 U.S.C. § 1654. "The federal courts 'have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity.'" *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*) (quoting *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008)). This includes a trust. *Van De Berg v. Comm'r*, 175 F. App'x 539, 541 (3d Cir. 2006) ("Thus, a non-lawyer trustee, such as Van De Berg, may not represent a trust pro se before this Court.").Furthermore, an artificial entity may only appear in federal court through licensed counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 196, 201-02 (1993) ("It has been the law for the better part of two centuries, . . . that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities.") (citations omitted); *see also Marin v. Leslie*, 337 F. App'x 217, 220 (3d Cir. 2009) (*per curiam*) (trustee pursuing claims on behalf of a trust may not appear *pro se*).

    Furthermore, only a natural person may qualify for treatment *in forma pauperis* under 28 U.S.C. § 1915. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 196 (1993) (neither an estate nor a trust may proceed *in forma pauperis*); *Gray v. Martinez*, 352 F. App'x 656, 658 (3d Cir. 2009) (*per curiam*) ("Because an estate is not a natural person, it may not . . . proceed [*in forma paupers*]."); *Upshur v. Hospedale*, No. 17-1358, 2018 WL 395729, at *2 (D. Del. Jan. 12, 2018) (a trust may not proceed *in forma pauperis*). Thus, if a trust is the plaintiff in a case, licensed counsel must enter an

dismisses Custer's constitutional claims with prejudice and his state law claims without prejudice for lack of subject matter jurisdiction.[2]

I[3]

The Court screened Custer's original Complaint, in which he sued Triple Canopy, Inc., Jason Green, alleged to be the Chief Executive Officer of Triple Canopy, and Triple Canopy employees George Solis, Mark Pentowski, N. Croft, Shakeema Brown, Mr. Walker, Kenneth Lane, Jr., Ms. Jacobs, Ms. Brown, Mike Bodoo, Mr. Lappatina, and employees 1 – 99. Custer also named Tim Reardon, who is alleged to be the Chief Executive Officer of Constellis, Inc., the Social Security Administration; SSA Commissioner Andrew Saul, Regional SSA Commissioner Elaine Garrison-Daniels, SSA employees 1 – 99, Secretary of Homeland Security Alejandro Mayorkas, Federal Protective Service employees Anthony Clemente, "3 Paul 502," Federal Protective Service employees 1 – 99, Secretary of the Treasury Janet Yellen (misspelled Yellin), Internal Revenue Service Commissioner Daniel Warfel, IRS Philadelphia Regional Commissioner William D. Waters, United States Attorney General Merrick Garland,

---

appearance on its behalf and it must pay the necessary fees to commence a civil action. Because the Court ultimately determines that the allegations regarding artificial entities are frivolous, construing the Amended Complaint liberally, the Court will deem the case to have been brought by Custer the individual so that he may properly proceed *pro se* and benefit from *in forma pauperis* status.

[2] Custer has also filed a Motion to Amend his complaint again to add additional pages he apparently failed to include when he mailed the Amended Complaint to the Clerk of Court. (ECF No. 9.) The Motion is granted and the additional pages, which are mostly duplicative of other parts of the pleading are incorporated into the Amended Complaint for purposes of statutory screening.

[3] The allegations set forth in this Memorandum are taken from Custer's AC and Exhibits thereto. (ECF Nos. 8, 9.) The Court adopts the pagination supplied by the CM/ECF docketing system.

Pennsylvania Attorney General Michelle A. Henry,[4] and Attorney General employees 1 – 99. Upon screening, the Court dismissed the Complaint without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 8. Custer was granted leave to file his Amended Complaint. (ECF No. 6 at 8.)

Custer names the same Defendants he did in his initial Complaint. (AC at 6-12.) The claims are asserted against the Defendants in their individual and official capacities.[5] (*Id*. at 6.) The Amended Complaint is lengthy and repetitive; the claims appear to arise from Custer's attempts to gain access to the Philadelphia SSA offices on at least six occasions in late August and early September 2022. He was not let in because he would not wear a mask. The individuals who precluded his entry are alleged to be associated with Triple Canopy.[6] Custer also alleges that he was assaulted by Triple Canopy employees and held and questioned by Federal Protective Services

---

[4] The Amended Complaint does not include any allegations about Henry's purported participation in the events giving rise to Custer's claims and all claims against her are dismissed.

[5] *Bivens* provides a remedy for certain constitutional violations committed by federal actors. However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, the *Bivens* claims brought against Defendants Garland, Yellen, Mayorkas, Saul, Garrison-Daniels, Warfel, Waters, Clemente, and "3 Paul 502" in their official capacities are in essence claims against the United States that are dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

[6] Triple Canopy is a private security company headquartered in Reston, Virginia with a registered address in Herndon, Virginia. It is a subsidiary of Constellis, Inc. *See* https://www.constellis.com (last accessed November 27, 2023).

employees. He claims he has been banned from accessing SSA offices since that time and has suffered associated problems, and that he suffered physical and emotional injuries as a result of the assault.

Custer alleges that on August 17, 2022, he went to the Philadelphia SSA office to obtain an account statement so that he could apply for rent rebate benefits. (*Id.* at 15.) He alleges he was met at the door by Triple Crown employees Pantowski and Solis, who told Custer he was required to put on a mask before entering. (*Id.*) Custer allegedly replied that he could not wear a mask and that Pantowski then told Custer that the SSA manager Custer wanted to see was in a meeting. (*Id.*) Custer allegedly responded that Pantowski and Solis would be held liable for denying Custer entry to the office and risked court action, though Pantowski and Solis appeared unfazed by the threat. (*Id.*) Custer claims that he returned to the office later that day and handed Pantowski, Solis and Walker each an affidavit of status, a notice of claim, and a fee schedule for each incident. (*Id.*)

Custer contends he returned to the SSA office the next day and was met by Pantowski, who asked him to wait while Pantowski consulted a supervisor. Custer says an unidentified African American woman in a Triple Canopy uniform asked Custer if he had a mask and Custer said he could not wear one. (*Id.*) Custer alleges that the woman refused to provide her name, that he told her four times that he could not wear a mask, and the woman replied, "we cannot service you unless you wear a mask." (*Id.* at 16.) Custer claims Walker joined the conversation and told Custer to leave, to which he responded that he would not leave without his account statement and asked to speak to a manager. (*Id.*)

Custer allegedly tried to enter the office, at which time Walker told him, "You are definitely not getting past me, " while Brown asked Custer how he was and walked away, and Defendant "3 Paul 502" asked Custer if he had spoken with Custer the previous day. (*Id.*) "3 Paul 502", in a raised voice and while pointing in Custer's face, allegedly told Custer to put on a mask and complete his business or risk arrest. (*Id.*) "3 Paul 502" also allegedly told Custer that if Custer did not comply with his instructions, he would have Custer banned from the building. (*Id.*) He then threatened him with a gun as he followed Custer to the elevator. (*Id.* at 17.) Custer claims that when he got in the elevator, he was met by three Federal Protection Service employees, including Defendant Clemente, who allegedly asked Custer if he, Clemente, could remove his mask. (*Id.*) Custer alleges that he returned to the SSA office later that day to serve the Triple Canopy employees with his notice of claim, affidavit of status and trespassing fee schedule. (*Id.*)

Custer says he returned to the SSA office on August 24, 2022, where he was met in the foyer by Defendant Jeremiah, who told Custer that policy required that while on federal property, Custer must wear a mask. (*Id.*) Custer allegedly responded that there was no such law, and asked if he was being denied access, where upon Jeremiah told Custer to leave. Custer alleges that he then served Jeremiah with a notice of claim, affidavit of status and fee schedule. (*Id.*) Custer claims he was denied access to the office later that day by an unnamed African American female Triple Canopy employee. (*Id.*)

On August 31, 2022, Custer was denied access to the SSA office by Triple Canopy employees Lane, Walker, and Jeremiah, and on September 1, 2022, was denied entry to the office by Triple Canopy employees Lane, Jacobs, and Walker. (*Id.* at 18.)

On September 2, 2022, Custer was allegedly met at the entrance of the SSA office by Solis, Bodoo, and Jacobs, who wouldn't let him in because he would not wear a mask. As he left the office, a Federal Protective Services employee stopped him then he said he was free to go. (*Id.*)

Custer claims that on September 7, 2022, he entered the SSA office and was waiting in line when he was "accosted" by Solis, Croft, Pantowski, Lappatina and other unidentified Triple Canopy employees because he was not wearing a mask. (*Id.*) When Custer said he could not wear a mask, Solis, Pantowski, Lappatina, Croft and the unnamed Triple Canopy employees allegedly surrounded him, conduct that Custer says he recorded on his phone. Solis said Custer was not permitted to record in SSA offices. (*Id.* at 19.) Custer claims he was pepper-sprayed and handcuffed, apparently by Solis or some other employee of Triple Canopy, and held and questioned by Federal Protective Service personnel. He was released but received two Central Violations Bureau citations, identified as numbers 9393701 and 9393702, which Custer alleges were dismissed on January 23, 2023.[7] (*Id.* at 19.)

Custer claims that since September 23, 2022, he has been banned from meeting with SSA representatives, has unsuccessfully appealed this ban, and has been unsuccessful at contacting SSA representatives by telephone.[8] (*Id.*) Custer alleges that he filed private criminal complaints against Solis and Croft but was denied relief and says he directed a complaint to Garrison-Daniel on March 23, 2023, but does not

---

[7] The Central Violations Bureau citations bearing violation numbers 9393701 and 9393702 are attached to Custer's Amended Complaint at 39 and 40.
[8] *See* correspondence from SSA to Custer advising him of the ban and advising him that his appeal of the ban has been denied. (Amended Complaint at 110-11 and 116-17.)

6

describe the outcome of this communication.⁹ (*Id.*) Custer alleges that the ban is preventing him from applying for a name change because he cannot obtain a Social Security card. (*Id.*)

Custer alleges violations of his First and Fourth Amendment rights.¹⁰ (*Id.* at 21.) He asserts a false imprisonment claim against Clemente and Federal Protective Service Defendants 1-10. (*Id.* at 24, 25.) He brings claims for assault and battery against Solis, Croft, Jacobs, Pantowski, Lappatina, and Triple Canopy employees 1-99. (*Id.* at 22, 25.)¹¹

Custer believes that because of the Defendants' conduct, he has been banned from the SSA offices and has suffered physical and emotional injuries. (*Id.* at 22.) He seeks money damages and an emergency injunction lifting the ban.¹² He seeks

---

⁹ (*See* Amended Complaint at 102-09.)

¹⁰ Custer also cites the Second Amendment (see AC at 21), which protects an individual's right to bear arms. None of the facts alleged describe any events involving a firearm belonging to Custer, and this claim is not plausible. Even if the Amended Complaint included facts alleging deprivation of a firearm, a Second Amendment claim asserted pursuant to *Bivens* would not be plausible. *See Meeks v. Larsen*, 611 Fed. App'x. 277, 285-86 (6th Cir. 2015) (declining to extend *Bivens* liability to Second Amendment claim arising from government's seizure of firearms in light of Supreme Court's expressed reluctance to extend *Bivens*) (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)).

¹¹ Custer also asserts claims for negligence, gross negligence, overreach of power, lack of duty of care, and failure of the Defendants' custodial and ministerial duties. (Amended Complaint at 20.) These claims are conclusory and not plausible.

¹² Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018).

summary judgment. He asks that the Court issue a warrant for "special deposit property," which he claims is in the custody of Magistrate Judge Lynne Sitarski's court clerk, and a separate warrant for a "special deposit" allegedly placed in the custody of Assistant Philadelphia District Attorney Jim DeLafura. (*Id.* at 28.) Custer also asks the Court to direct SSA, the Department of the Treasury, the Federal Reserve, and the IRS to provide Custer with a full accounting of his social security number "trust" and his IRS "individual master file."[13] (*Id.* at 29.)

---

"If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). Additionally, if the request for injunctive relief centers on the ownership of money, any injury cannot plausibly be deemed to be irreparable. *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013) ("Irreparable harm is injury that cannot adequately be compensated by monetary damages.") In light of the Court's disposition of Custer's claims on statutory screening, he cannot establish that he will be successful on the merits of this case, and his request for an emergency injunction is denied.

[13] The Court construes the requests for a warrant for the return of Custer's "special property deposit" and for the account and his IRS "individual master file" to be in the nature of requests for mandamus under 28 U.S.C. § 1361. Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus relief is generally considered a "drastic" remedy, "to be invoked only in extraordinary situations." *Kerr v. United States Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976). A party seeking a writ of mandamus must show that he has "(i) no other adequate means of obtaining the desired relief and (ii) a 'clear and indisputable' right to issuance of the writ." *Mote v. United States Dist. Ct. for Middle Dist. of Pennsylvania*, 858 F. App'x 39, 40 (3d Cir. 2021) (*per curiam*) (citations omitted), *cert. denied*, 142 S. Ct. 906 (2022).

For a district court to have subject matter jurisdiction to compel the action of an individual pursuant to § 1361, the individual must be "an officer or employee of the United States or any agency thereof." *See Semper v. Gomez*, 747 F.3d 229, 250-51 (3d Cir. 2014). The United States Court of Appeals for the Third Circuit has concluded, "in determining whether an individual qualifies as an officer or employee of the United States or any agency thereof, . . . that Congress, in enacting § 1361 was thinking solely in terms of the executive branch." *Mendez v. Plaskett*, 764 F. App'x 201, 202 (3d Cir. 2019) (internal citations and quotations omitted). Custer includes as Defendants the Commissioner of SSA, the Secretary of the Treasury, and the Commissioner of the IRS. These are proper Defendants,

Custer attaches numerous exhibits to his pleading. In an "Affidavit of Status," he describes himself as "a creation of GOD ALMIGHTY and a follower of God's laws first and foremost." (Amended Complaint at 47.) The Exhibits include a "Table of Authorities" referencing, *inter alia*, the Holy Bible, the United States Constitution, dictionaries, various statutes, the Hague Convention, and various legal treatises. (*Id.* at 120-22.) They also include numerous pieces of correspondence written and received by Custer, Notices to Appear and Violation Notices from this Court, a Philadelphia Police Department "Complaint or Incident Report" (largely illegible), what appears to be a private complaint addressed to Defendant Garrison-Daniels, lengthy discussions of the meaning of equity, Custer's Birth and Baptismal Certificates, various documents purporting to identify Custer as a "non-US citizen," "Private Native," and the "fully vested Grantee Absolute Grantor Settlor Exclusive Beneficiary" of the trust of Anthony

---

but the request is conclusory and undeveloped and does not state a plausible claim for such drastic relief.

To the extent Custer seeks relief from Judge Sitarski or her clerk, this request is also denied, because district courts do not have jurisdiction to compel the actions of judges or judicial employees. *See Semper*, 747 F.3d at 250-51 (citing *Trackwell v. United States Government*, 472 F.3d 1242, 1246 (10th Cir. 2007) (noting that "[f]or a district court to issue a writ of mandamus against an equal or higher court would be remarkable" and holding that the Supreme Court is not an "'agency' within the meaning of § 1361"); *Viola v. United States*, No. 17-0856, 2017 WL 4318029, at *3 (D. Conn. Sept. 28, 2017) (holding that district court lacked subject matter jurisdiction to issue a writ of mandamus against federal district court judge); *United States v. Cox*, No. 11-99, 2017 WL 11428575, at *4 (D.N.J. Jan. 6, 2017) (holding, *inter alia*, that district court lacked jurisdiction to grant writ of mandamus directed against Third Circuit Clerk), *aff'd*, 692 F. App'x 85 (3d Cir. 2017.

Additionally, to the extent Custer seeks relief from a Philadelphia Assistant District Attorney, the Court lacks jurisdiction to issue a writ of mandamus to state officials. *Demos v. United States Dist. Court of E. Dist of Wash.*, 925 F.2d 1160, 1161 (9th Cir. 1991). As noted, the Court only has "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States of an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

Joseph Custer, and a "Trust Indenture for the Anthony Custer Trust."[14] Custer also includes a series of photographs purporting to depict his physical injuries with his AC. (*See* ECF No. 8-1.)

II

The Court previously granted Custer leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss his Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021)

---

[14] Custer's Amended Complaint, and the Exhibits in particular, are replete with these types of nonsensical language and legalisms often found in pleadings filed by adherents to the so-called sovereign citizen movement. "[L]egal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity. *See United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan); *United States v. Crawford*, No. 19-15776, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (holding that criminal defendant's attempt to use fake UCC financing statements against prosecutor was a legal nullity); *Banks v. Florida*, No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars.")).

(quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Custer is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III

The Court understands Custer to be asserting civil rights violations pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971) and state law claims. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").[15] *Bivens* provides a damages remedy for constitutional violations committed by federal actors in very limited circumstances. *Egbert v. Boule*, 596 U.S. 482, 490-93 (2022); *Ziglar v. Abbasi*, 520 U.S. 120, 132 (2017). *Bivens*, however, is not so broad that it provides a remedy for any constitutional violation committed by any federal actor. To the contrary, since *Bivens* was decided in 1971, the Supreme Court has expressly recognized an implied cause of action in only three types of cases, *see Abbasi*, 520 U.S. at 132-33, and "has repeatedly refused to recognize *Bivens* actions in any new contexts." *Vanderklok*, 868 F.3d at 199; *see also Egbert*, 596 U.S. at 486 (reversing the United States Court of Appeals for the Ninth Circuit's extension of *Bivens* to a Fourth Amendment excessive force claim and a First Amendment retaliation claim against a U.S. Border Patrol agent "[b]ecause our cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a

---

[15] "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

job for Congress, not the courts"); *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018) ("the Supreme Court has never recognized a *Bivens* remedy under the First Amendment.").

The three cases where the Supreme Court has recognized an implied private action against federal officials are: (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 520 U.S. at 131("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself.").

A

Custer asserts claims against the SSA and Department of Homeland Security Federal Protective Service. *Bivens* claims against the United States and federal agencies are barred by sovereign immunity, absent an explicit waiver. *Meyer*, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). The Social Security Administration and the Department of Homeland Security Federal Protective Service are federal agencies and immune from suit under *Bivens*.

B

Custer asserts claims against SSA Commissioner Andrew Saul, Regional Commissioner Elaine Garrison-Daniels, Secretary of Homeland Security Alejandro

12

Mayorkas, Secretary of the Treasury Janet Yellen, IRS Commissioner Daniel Werfel, Regional Commissioner of IRS William D. Waters, United States Attorney General Merrick B. Garland, and Pennsylvania Attorney General Michelle A. Henry, Triple Canopy CEO Jason Green and Constellis CEO Tim Reardon. (AC at 6, 7, 10-12.) But he alleges no facts which could establish these individuals' participation in any of the events giving rise to his claims. "To be plausible, a *Bivens*-based claim must allege personal involvement by the named defendants." *Diaz v. Pistro*, No. 21-2909, 2021 WL 3471169, at *2 (E.D. Pa, Aug. 6, 2021) (citing *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008). "Absent allegations that a government official had personal involvement in the alleged wrongdoing, a plaintiff fails to state a claim." *Davis v. Kennedy*, No. 19-1699, 2020 WL 5653327, at *2 (M.D. Pa. Sept. 23, 2020) (dismissing *pro se* litigant's *Bivens* claims on statutory screening for failure to allege personal involvement of each defendant). Because *Bivens* liability is personal in nature and will attach only where the defendant is alleged to have participated in the alleged wrongful conduct, *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), Custer has not stated a plausible claim against these individuals.

C

The bulk of Custer's Amended Complaint describes his unsuccessful efforts to obtain access to the Philadelphia SSA offices. He claims the Triple Canopy Defendants prevented him from entering the SSA office because he would not wear a mask and that several Triple Canopy employees assaulted, handcuffed and pepper sprayed him. (*Id.* Amended Complaint at 18-19.) Custer broadly alleges violations of his constitutional rights arising from this conduct and asserts a claim for damages against Triple Canopy and its named employees. These claims are not plausible.

Although Custer's allegations are not precise, Triple Canopy, through its parent Constellis appears to be a private security company that has been awarded United States government contracts in various capacities. *See* https://www.constellis.com/ (last accessed November 27, 2023). The Court thus understands Triple Canopy to have been acting as a private security contractor for SSA. In *Malesko*, 534 U.S. at 70-74, the United States Supreme Court held there is no implied private right of action under *Bivens* for damages against private entities that engage in alleged constitutional violations while acting under color of federal law. Correctional Services Corporation, a private contractor engaged to operate facilities housing federal prisoners and detainees, was sued pursuant to Bivens when a CSC employee required an inmate with physical activity limitations to climb five flights of stairs. *Id.* at 63-64. The inmate suffered a heart attack and fell, injuring his ear. *Id.* at 64. He later sued CSC and its employees under *Bivens*. *Id.* The District Court dismissed the case. On appeal, the United States Court of Appeals for the Second Circuit reversed in part, finding that private entities should be held liable under *Bivens* to accomplish *Bivens*'s important goals. The Supreme Court reversed, noting *Bivens* was "concerned solely with deterring the unconstitutional acts of individual officers," *id.* at 71, and that extending liability to a private corporation was not in keeping with that goal, because "if a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." *Id.* (citations omitted). *See also Baez v. Cornell Companies, Inc.*, No. 10-24, 2010 WL 5648572, at *3 (W.D. Pa. Dec. 23, 2010) (citing *Holly v. Scott*, 434 F.3d 287, 291-94 (4th Cir. 2006), *cert. denied*, 547 U.S. 1168 (2006) and holding *Bivens* liability did not extend to employees of private company

14

operating federal prison in part because adequate state court remedy existed). These principles apply equally in these circumstances.

D

1

Custer claims that his First Amendment rights were violated, but he does not identify which Defendant(s) violated those rights and does not describe the nature of the violation. Even if he had done so, as noted, *Bivens* liability has not been extended to claims arising under the First Amendment. *See Bistrian*, 912 F.3d at 95 ("the Supreme Court has never recognized a *Bivens* remedy under the First Amendment."); *see also Egbert*, 596 U.S. at 486 (reversing the Ninth Circuit's extension of *Bivens* to a Fourth Amendment excessive force claim and a First Amendment retaliation claim against a U.S. Border Patrol agent "[b]ecause our cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts").

2

Custer asserts a false imprisonment claim against Clemente and Federal Protective Service employees 1-10, stating he was held against his will for approximately four hours after being removed by force from SSA offices by Triple Canopy personnel. (AC at 24-25.) The Court liberally construes the claim as one asserting a Fourth Amendment claim under *Bivens*. The claim is factually undeveloped and presents a departure from the Fourth Amendment claim recognized in *Bivens*.

In *Bivens*, the Supreme Court recognized an implied cause of action for violation of the Fourth Amendment's right against unreasonable searches and seizures. *Bivens*, 403 U.S. at 389-90, 397. There, the complaint alleged that Federal Bureau of Narcotics

agents entered the plaintiff's apartment, manacled him in front of his wife and children, arrested him and threatened to arrest his entire family. *Id.* at 389. The agents then searched his apartment and when finished, took the plaintiff to a federal courthouse where he was interrogated, booked and subjected to a visual strip search. *Id.* The complaint alleged that the search and arrest were conducted without a warrant or probable cause. *Id.* The Supreme Court has since refused to extend Fourth Amendment *Bivens* liability beyond the facts of the case. See *Egbert*, 596 U.S. at 486 (reversing extension of *Bivens* liability under the Fourth Amendment for an excessive force claim against a U.S. Border Patrol Agent).

Taking Custer's allegations as true, it appears that the Triple Canopy employees engaged in conduct that could plausibly be termed "excessive force" when they threatened, handcuffed, and pepper sprayed Custer. They are not, however, subject to *Bivens* liability. Clemente and the unidentified Federal Protective Service officers are not alleged to have engaged in any conduct beyond holding Custer for questioning after Triple Canopy employees restrained him. This allegation fails to allege a *Bivens* claim since it is materially different from, and therefore an improper extension of, the claim recognized in *Bivens*. Custer does not allege he was handcuffed and, while he apparently was issued Central Violations Bureau notices, he does not allege he was arrested. Custer's Fourth Amendment claim based solely on being temporarily held for questioning does not fall under *Bivens's* narrow confines.

E[16]

Custer asserts claims for assault and battery against Solis, Croft, Jacobs, Pantowski, Lappatina, and Triple Canopy employees 1-99. (AC at 22, 24-25.) The Court is dismissing Custer's federal claims, and declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800

---

[16] Although the Court construes Custer's claims for assault and battery to be state law tort claims, it is possible Custer intended to raise claims under the Federal Torts Claim Act. The FTCA waives the United States' sovereign immunity for claims for money damages sounding in state tort law. 28 U.S.C. § 2674 (waiving sovereign immunity to make the United States liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) ("The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions.'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456-57 (3d Cir. 2010). However, this waiver of immunity is subject to limitations and jurisdictional requirements, namely, the United States is the only proper defendant in an FTCA action. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). In addition, a plaintiff must exhaust administrative remedies as a prerequisite to filing a lawsuit under the FTCA. *See* 28 U.S.C. § 2675(a). In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (stating that exhaustion is "jurisdictional and cannot be waived"); *see also Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018). A plaintiff "must . . . plead administrative exhaustion in an FTCA case." *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011). Custer has neither named the United States nor pled any facts about administrative exhaustion.

F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Custer does not allege the citizenship of the parties. He gives Pennsylvania addresses for himself and lists Virginia addresses for Defendants Solis, Croft, Jacobs, Pantowski, Lappatina, and Triple Canopy employees 1-99. Custer does not provide addresses for, or allege the citizenship of, the individual Triple Canopy Defendants that work at the Social Security office in Philadelphia. Accordingly, Custer has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. These claims will be dismissed for lack of subject matter, but without prejudice to Custer pursuing the claims in an appropriate state court.

IV

As Custer has already been given an opportunity to cure the defects in his claims and has been unable to do so, further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019)

(amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  The Court dismisses Custer's constitutional claims with prejudice and his state law claims without prejudice for lack of subject matter jurisdiction.

    An appropriate Order follows.

                                              **BY THE COURT:**

                                        ***/s/ Gerald J. Pappert***
                                        **GERALD J. PAPPERT, J.**